

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

**NO. 2-07-009-CV**

---

LARRY WATSON,                                        APPELLANTS
SHERIDAN K. WATSON,
WELDON KENNEDY,
AND THENA KENNEDY

V.

BOBBY J. TIPTON                                        APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 2 OF PARKER COUNTY

------------

## OPINION

------------

Weldon and Thena Kennedy, their daughter Sheridan Watson, and her husband Larry (collectively "Appellants") appeal from the trial court's grant of summary judgment for Appellee Bobby J. Tipton. Because we hold that the trial court did not err by granting summary judgment, we affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

Weldon owns J.W. Kennedy, Inc. ("JWK") in Weatherford, Texas. He and his wife Thena live at 606 Hilltop Drive in Weatherford. Weldon's daughter Sheridan and her husband Larry live at 107 Oriole Street in Weatherford.

On June 13, 2005, Tipton filed two declaratory judgment actions—one against the Kennedys, and the other against the Watsons. In each suit, Tipton asked the trial court to construe the validity of a warranty deed and to declare that Tipton held good and marketable title to the property described by the deed.

In his suit against the Kennedys, Tipton alleged that on September 25, 2001, for consideration, the Kennedys executed a warranty deed ("the Kennedy deed") conveying to Tipton the property at 606 Hilltop. He alleged that the Kennedys retained possession of the property under an agreement that they would pay all taxes and insurance on the property and that the Kennedys violated that agreement. He further alleged that in a subsequent forcible detainer action, the Kennedys raised an issue of title by challenging the validity of the deed.

Tipton made similar claims in his suit against the Watsons. He alleged that on September 24, 2001, the Watsons conveyed to him by warranty deed ("the Watson deed") property at Lot Fifteen, Block Three in the Rolling Hills

2

Addition of Weatherford, a property known to him to have a municipal address of 1318 Clear Lake Road, Weatherford, Texas. He claimed that the Watsons retained possession of the property under an agreement that they would pay all taxes and insurance on it, that the Watsons violated that agreement, and that in a subsequent forcible detainer action he brought, the Watsons raised an issue of title by challenging the validity of the deed.

The declaratory judgment actions were consolidated, and both the Kennedys and the Watsons filed answers that included verified denials that they executed the documents forming the basis of the lawsuit, verified denials of the genuineness of their endorsements on those documents, and the affirmative defense of release. They subsequently filed amended answers adding the affirmative defenses of laches and lack of consideration.

After counsel for the Watsons and the Kennedys withdrew, Tipton filed his first amended motion for traditional and no-evidence summary judgment on his declaratory judgment action against the Watsons. In his no-evidence motion, Tipton alleged that the Watsons had no evidence to support their contentions that they did not execute the deed, that the endorsements on the deed were not genuine, or that Tipton's suit was barred by the doctrine of release. He argued that because the deed was recorded in the public records, the presumption that the deed is valid applies and that an acknowledgment on

3

a deed is conclusive evidence of the facts stated in the instrument. He restated these assertions in his traditional motion for summary judgment, and to this motion, he attached a copy of the Watson deed showing that it had been recorded in October 2001.

On the same day, Tipton filed his first amended motion for traditional and no-evidence summary judgment on his declaratory judgment action against the Kennedys, raising the same arguments with respect to the Kennedy deed as he raised regarding the Watson deed. He attached to the motion a copy of the Kennedy deed showing that it had been recorded in January 2003.

The Kennedys and the Watsons, acting pro se, filed an amended answer alleging that Tipton's attorney Alex Tandy, either alone or in complicity with Tipton, fraudulently obtained the signatures of the Watsons and Weldon and fraudulently appended them to the deeds at issue. The answer also listed twenty-two affirmative defenses in accordance with rule 94 of the Texas Rules of Civil Procedure.[1]

On the same date, the Watsons and the Kennedys filed a joint response to the summary judgment motions. To their response, they attached a number of documents that they claimed raised a fact issue. Appellants filed a third

---

[1] *See* Tex. R. Civ. P. 94.

4

amended answer on the day of the summary judgment hearing, which included

a counterclaim for fraud and for failing to give constitutional and Federal Truth

in Lending notices and disclosures relating to their homestead property.

The trial court granted summary judgment for Tipton. The court's order

states that the Kennedy and Watson deeds passed good and marketable title

to Tipton and also awards Tipton attorneys' fees. The order further states that

it is a final order "and disposes of all claims and causes of action herein." The

Kennedys and the Watsons appealed.

## II. STANDARD OF REVIEW

A plaintiff is entitled to summary judgment on a cause of action if it

conclusively proves all essential elements of the claim.[2] When reviewing a

summary judgment, we take as true all evidence favorable to the nonmovant,

and we indulge every reasonable inference and resolve any doubts in the

nonmovant's favor.[3] The summary judgment will be affirmed only if the record

---

[2] *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

[3] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

5

establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[4]

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.[5] The motion must specifically state the elements for which there is no evidence.[6] The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[7] If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper.[8]

---

[4] *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

[5] Tex. R. Civ. P. 166a(i).

[6] *Id.; Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex. 2002).

[7] *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002).

[8] *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

III.  ANALYSIS

## A.  Whether the summary judgment is interlocutory

In Appellants' second point, they contend that the summary judgment is interlocutory because it did not dispose of the counterclaim they raised in their third amended answer.  Because this point goes to this court's jurisdiction, we consider it first.

A judgment is final if it "disposes of all the remaining parties and claims, based on the record in the case."[9]  Thus, if Appellants had a pending counterclaim not disposed of by the judgment, then the judgment was not final.  Rule 63 of the Texas Rules of Civil Procedure provides that amended pleadings offered within seven days of the trial shall be filed only after the trial court gives the party leave to do so.[10]  The trial court shall grant leave to file the amended pleadings unless the opposing party demonstrates surprise or prejudice or "the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment."[11]  We review a trial court's denial of leave to file amended

---

[9] *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001).

[10] Tex. R. Civ. P. 63.

[11] *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990); *see also* Tex. R. Civ. P. 63, *Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex. 1980).

7

pleadings for abuse of discretion.[12] For purposes of rule 63, a summary judgment proceeding is a trial.[13]

In the trial court, Appellants filed their amended pleadings on September 21, 2006, the day of the summary judgment hearing, which clearly was not within the time period provided by rule 63. Tipton objected to the late filing, and the court upheld the objection, stating, "These documents are not timely filed and the Court is not going to consider them today."

On appeal, Appellants do not argue or cite any authority suggesting that their amendment did not cause surprise and would not prejudice Tipton, that their pleadings did not introduce a new substantive matter, or that the trial court abused its discretion by denying them leave to file the amended pleadings asserting their counterclaim. They argue only that they had filed a pleading asserting a counterclaim and that the order granting summary judgment does not dispose of that claim. Because the record is clear that the trial court denied Appellants leave to file their third amended original petition and therefore any new counterclaims asserted in it were not on file at the time the trial court granted summary judgment, the summary judgment disposed of all the claims

---

[12] *Hardin*, 597 S.W.2d at 349–50.

[13] *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988).

before the court at the time of the judgment. Consequently, the summary judgment is final and not interlocutory.[14] We overrule Appellants' second point.

## B. Whether the trial court erred by granting summary judgment

In Appellants' first point, they argue that the trial court erred by granting summary judgment for Appellee. We first determine whether the trial court erred by granting no-evidence summary judgment for Tipton.

Tipton argued in his motion that Appellants had no evidence on their affirmative defense of release and on their verified denials that they executed the deeds and that the endorsements on the deeds were genuine. Appellants argue on appeal that they offered summary judgment proof of each element of the "three affirmative defenses" for which Tipton claimed that they had no evidence. As we discuss below, the verified denials relied on by Appellants are not affirmative defenses subject to a no-evidence summary judgment motion. Because these matters are not affirmative defenses, and because Appellants do not raise error with respect to the trial court's grant of summary judgment on their other nineteen asserted affirmative defenses, we consider only the affirmative defense of release.

---

[14] *See Lehmann*, 39 S.W.3d at 200.

In the trial court, Appellants attached evidence to their response, but they did not explain to the trial court how any of the evidence supported their affirmative defenses or raised a genuine issue of material fact on any matter Tipton was required to prove. They stated only that "the court should deny [Appellee's] motion for summary judgment because [Appellants'] Second Amended Answer and Exhibits[,] attached here[ ]to[ ]this response, . . . created a fact issue on each el[e]ment of the affirmative defenses."

Most of Appellants' evidence falls into two categories: evidence relating to an agreement between Tipton and Weldon, and evidence relating to a conveyance by Terry Ellis to Appellants of the properties at issue.

Evidence in the first category includes

- a loan agreement acknowledged on April 5, 2002, between Weldon as president of JWK and Tipton, which stated that Tipton had advanced a total of $300,000 to Weldon individually and to JWK, and that if the money advanced was not repaid by April 20, 2002, Tipton would buy JWK for $3.5 million, including real property owned by the company, the legal description of which places it in the Joel Walker Survey, "locally known as 1318 Clear Lake" in Weatherford, Texas;

- a certificate of resolutions dated April 5, 2002, filed of record on May 15, 2002, signed by Weldon as president of JWK resolving that the "attached agreement" (presumably the loan agreement that was recorded with the certificate) was adopted as a sales contract; and

- a letter from Sheridan to Tipton, notifying him that he had defaulted on the agreement of April 5, 2002, and that the

10

agreement was therefore terminated and the advances would be retained as liquidated damages.

Evidence in the second category includes the following instruments, all executed by Terry Ellis as representative of the estate of Vivian Swearingin and filed of record on October 23, 2002:

- a release of lien, dated June 20, 2002, stating that on September 25, 2001 [the day after the date of the Watson deed], the Watsons executed and delivered to Ellis a promissory note concerning Lot Fifteen, Block Three, Rolling Hills Addition, that the note had been paid in full to Ellis as attorney in fact for Swearingin, and that therefore Ellis released and quitclaimed all right, title, and interest in the property described;

- a warranty deed dated June 20, 2002, conveying from Ellis as attorney in fact for Swearingin to the Watsons all of Swearingin's interest in Lot Fifteen, Block Three of the Rolling Hills Addition in Weatherford;

- a release of lien, dated June 20, 2002, stating that on September 25, 2001, in order to secure a promissory note executed by the Watsons and payable to Ellis, Weldon had executed and delivered to Ellis a warranty deed to the property at Lot One, Block Ten, Roselawn Addition, with a local address of 606 Hilltop Drive, and that the note had been paid in full to Ellis as attorney in fact for Swearingin, and Ellis therefore released and quitclaimed all right, title, and interest in the property described; and

- a warranty deed dated June 20, 2002, conveying from Ellis as attorney in fact for Swearingin to Weldon her interest in Lot One, Block Ten, Roselawn Addition, locally known as 606 Hilltop Drive in Weatherford.

Appellants also contend that they provided evidence supporting their claims in the form of affidavits attached to their second amended original answer. By

11

"affidavits," Appellants refer to the fact that their answer was verified as required for pleas under civil procedure rule 93.[15]

Appellants argue that their evidence was more than a scintilla to support their affirmative defense of release. Appellants did not point out to the trial court evidence supporting their affirmative defense of release as to Tipton, and they do not do so in their brief on appeal. As best we can determine, Appellants' evidence of the defense of release was limited to a statement in their second amended pleadings that Ellis, acting as the representative of Swearingin, who they asserted was Tipton's partner, executed a release and conveyed the properties back to them after determining that no indebtedness existed. Generally, a party's pleadings, even if verified, are not competent summary judgment evidence.[16] Furthermore, the pleadings here do not meet the requirements of rule 166a because there is no indication that Appellants have personal knowledge of the facts contained in them, and they do not assert facts demonstrating that they have personal knowledge of the conclusions in their pleadings. For example, there is no indication that Appellants have personal knowledge of the facts asserted that Tipton or his attorney forged or

---

[15] *See* Tex. R. Civ. P. 93 (requiring certain pleas to be verified).

[16] *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995).

12

fraudulently attached Appellants' signatures to the deeds. Nor is there any indication that Appellants are competent to testify to those facts. Thus, the pleadings are not competent summary judgment evidence.[17]

Furthermore, Appellants fail to connect the rest of the evidence to their affirmative defense. Tipton and Swearingin may have been partners—the appellate record includes a check in the amount of $200,000 from Tipton and Swearingin to the Watsons, drafted around the same time that the Watson and Kennedy deeds were executed. But neither the Watsons nor the Kennedys have raised the argument here or in the trial court that they executed and delivered the deeds but did so to secure a debt rather than to convey title; they expressly deny ever executing the deeds. Appellants did not point out to the trial court or to this court any evidence that the deeds were not given to Tipton individually, that the deeds were given to Tipton as security for a debt that Ellis had authority to release, or that Ellis had the authority to convey the properties to Appellants. A deed does not convey title when no title rests in the grantor,[18] and thus, because Appellants did not produce evidence raising a fact issue as

---

[17] *See id.* at 660–61 (holding that verified pleadings were not competent summary judgment evidence when pleadings did not otherwise meet requirements of rule 166a).

[18] *Day & Co., Inc. v. Texland Petroleum, Inc.*, 718 S.W.2d 384, 390 (Tex. App.—Amarillo 1986), *aff'd*, 786 S.W.2d 667 (Tex. 1990).

to whether Ellis held title, the deeds from Ellis do not raise a fact issue as to whether Ellis's release of lien and warranty deeds defeated Tipton's right to recovery. The fact that the deed from Ellis to Weldon was recorded before the Kennedy deed does not affect our holding. An unrecorded deed is binding on a party to the deed,[19] and thus, the Kennedy deed was binding on Weldon even while it was unrecorded.[20]

Because Appellants did not produce more than a scintilla of evidence to support their affirmative defense of release, the trial court did not err by granting no-evidence summary judgment for Tipton.

We also hold that Tipton established his right to judgment on his traditional motion for summary judgment. When a grantor transfers property, title to the property vests in the grantee upon execution and delivery of the deed conveying the property.[21] Whether the grantor intended to deliver the deed and convey the property in accordance with the deed is "determined by examining all the facts and circumstances preceding, attending, and following

---

[19] Tex. Prop. Code Ann. § 13.001 (Vernon 2004).

[20] *See id.*

[21] *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261–62 (Tex. 1975).

14

the execution of the instrument."[22]   But proof that the deed was recorded creates a presumption of and establishes a prima facie case of delivery and intent by the grantor to convey the land.[23]  This presumption may be rebutted by showing "(1) that the deed was delivered or recorded for a different purpose, (2) that fraud, accident or mistake accompanied the delivery or recording, or (3) that the grantor had no intention of divesting himself of title."[24]

Tipton produced copies of the deeds at issue and proof that the deeds had been filed in the records of Parker County.  The notarized deeds named him as grantee and Appellants as the grantors.  The Watson deed described the property conveyed as Lot Fifteen, Block Three of the Rolling Hills Addition in Weatherford, Texas, according to the map and plat of that addition in the Parker County records.   The deed from Weldon described the property conveyed as Lot One, Block Ten, Roselawn Second Addition, "locally known as 606 Hilltop Drive," in Weatherford, Texas.  By providing the deeds and proving that the deeds were recorded, Tipton established a prima facie case that the Watsons and Weldon delivered the deeds and intended to convey the

---

[22] *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.).

[23] *Swenson*, 517 S.W.2d at 261–62; *Troxel*, 201 S.W.3d at 297.

[24] *Swenson*, 517 S.W.2d at 262.

15

property described. A showing that the deeds were executed and delivered with an intent to convey the property is sufficient to establish that the deeds vested title to the properties in Tipton.[25]

On appeal, Appellants argue that the deeds are not entitled to the presumption because the file stamp numbers suggest that the documents were somehow altered and pages interchanged. Specifically, they point out that the Watson deed has a file stamp and page number that is quite a bit lower than the file stamp and page number of the Kennedy deed, indicating that the Watson deed was filed much earlier than the Kennedy deed, which they argue is contrary to what one would expect if the deeds had been signed one day apart. A showing that fraud accompanied the recording of the deeds would rebut the presumption that Appellants intended to convey the property to Tipton.[26]

The evidence shows that the Watson deed was filed in October 2001 and that the Kennedy deed was filed in January 2003; the Watson deed has a lower record number because it was filed over a year before the filing of the Kennedy deed. We have no evidence before us explaining why the Kennedy deed was

---

[25] *Id.* at 261–62.

[26] *Id.* at 262.

not filed until 2003, but Appellants make no argument as to how the delay in filing raises a fact issue on whether fraud accompanied the delivery or recording.

Appellants also argue that the record number for the Watson deed is lower than the record number for an agreement between Weldon and Tipton "which is known to have been executed on April 5, 2001"; Appellants claim that this implies that the Watson deed was filed before April 5, 2001, which is at fatal variance with the date on the Watson deed of September 24, 2001. Whatever the date of the execution of the agreement, the evidence shows that it was filed on May 15, 2002. Because the Watson deed was filed before that date, it is no surprise that the Watson deed has a lower record number than the agreement. This evidence does not raise a fact issue as to the validity of the deeds or Appellants' intention to convey the property.

Appellants next argue that with respect to the Kennedy deed, Kennedy's wife was required to join in its execution under property code section 41.004, and because she did not, the deed does not not support Tipton's declaratory judgment action. Section 41.004 relates to abandonment of a homestead.[27]

---

[27] Tex. Prop. Code Ann. § 41.004 (Vernon 2000).

17

The plea of homestead is an affirmative defense.[28] Accordingly, Appellants had to affirmatively plead homestead and cannot raise it for the first time on appeal.[29] Nowhere in the trial court did they plead that the Kennedys' property was homestead property and that therefore, because Weldon's wife did not join in the deed, the deed was inoperative against her homestead right. Thus, they cannot raise it now as a ground for reversal.[30]

Next, Appellants contend that Tipton presented no summary judgment evidence that he paid consideration for the conveyances. Thus, they argue, Tipton did not carry his burden of proof. Appellants do not cite any authority supporting their argument that Tipton had to prove consideration to prevail.[31] And we note that Tipton did not have to prove consideration because mere lack

---

[28] *Svacina v. Gardner*, 905 S.W.2d 780, 782 (Tex. App.—Texarkana 1995, no writ); *Bennett v. State Nat'l Bank, Odessa, Tex.*, 623 S.W.2d 719, 722 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

[29] *Clear Creek Basin Auth.*, 589 S.W.2d at 678 (holding that nonmovant may raise sufficiency of the evidence for the first time on appeal but that any other grounds for reversal must have been raised in the trial court).

[30] *See id.*

[31] *See* Tex. R. App. P. 38.1(i) (requiring briefs to contain arguments supported by appropriate citations to authority).

18

of consideration would not have prevented the deeds from conveying title.[32]

Furthermore, as we discuss below, the acknowledgments on the deeds constitute prima facie evidence that the deeds were executed for the consideration stated therein. Finally, lack of consideration is an affirmative defense on which Appellants, not Tipton, would have had the burden of proof.[33] Because Tipton was not required to prove consideration to be entitled to summary judgment, we reject Appellants' arguments on the matter.

Appellants next assert that Tipton's evidence suggests that the property he alleged was conveyed to him by the Watsons was the JWK plant, which the Watsons did not have authority to convey, and not the Watsons' home address, or if it was the Watsons' home address, that property was their homestead. The deed Tipton produced to show a conveyance from the Watsons to Tipton described the property as Lot Fifteen, Block Three of the Rolling Hills Addition in Weatherford, Texas, as described in the deed records of Parker County.

---

[32] *Higgs v. Farmer*, 234 S.W.2d 1021, 1022 (Tex. Civ. App.—Fort Worth 1950, no writ) (stating that a conveyance of land need not be supported by consideration to be effective); *see also Uriarte v. Petro*, 606 S.W.2d 22, 24 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (noting that ordinarily, want of consideration alone, without a showing of fraud or undue influence in obtaining the deed, will not be ground for voiding a deed).

[33] *See 1464-Eight, Ltd. v. Joppich*, 154 S.W.3d 101, 103 (Tex. 2004) (noting that lack of consideration and failure of consideration are affirmative defenses).

Appellants' claim seems to be based on the fact that in his petition, Tipton stated that this property "is known to [Appellee] to have a municipal address of 1318 Clear Lake Road, Weatherford, Parker County, Texas." They argue that 1318 Clear Lake Road is the address of the company plant.

The Watsons did not argue to the trial court that the property described was their homestead or make any argument as to why they could not convey their homestead, and on appeal they make no argument and cite no authority suggesting that they could not convey their homestead.[34] And although Tipton may have stated in his petition that the property described in the deed had a municipal address of 1318 Clear Lake Road, the deed described the property by lot and block, and in his motion for summary judgment, he asked for a declaration that the deed passed good title to the property described in the deed. Appellants did not argue or point to any evidence demonstrating that the property described by lot and block was the same property as the 1318 Clear Lake Road property or that the Watsons could not legally convey such property.

---

[34] *See* Tex. R. App. P. 33.1(a), 38.1(i); *Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 332 (Tex. App.—Fort Worth 2006, no pet.) (holding that Appellants forfeited review of argument for which no authority or argument was provided on appeal); *Wilcox v. Hempstead*, 992 S.W.2d 652, 656–57 (Tex. App.—Fort Worth 1999, no pet.) (holding that argument is waived if not raised in the trial court).

Furthermore, the trial court's judgment described the property conveyed by the lot and block description, not by a street address. We therefore reject Appellants' argument that Tipton's evidence did not support a finding that the Watson deed conveyed to him the property described in the deed.

Finally, we consider the effect of the verified denials by the Watsons and by Weldon with respect to their execution of the deeds and the genuineness of the endorsements on them. As stated above, these verified denials are not affirmative defenses; they rebut the factual propositions of Tipton's pleadings, as opposed to accepting "the existence at one time or another of a prima facie case" and establishing an independent reason why, even if he proves his claims, he should not be allowed to recover.[35] Under rule 93 of the rules of civil procedure, if Appellants had not made the verified denials, then the deeds and the endorsements on them would have been accepted into evidence as fully

---

[35] *See Heggy v. Am. Trading Employee Ret. Account Plan*, 123 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (noting that "[a]n affirmative defense does not rebut the factual proposition of the plaintiffs' pleading, but instead, allows the defendant to introduce evidence to establish an independent reason why the plaintiff should not prevail" and that "[a]n affirmative defense generally accepts the existence at one time or another of a prima facie case"); *see also Tarrant County Hosp. Dist. v. GE Auto. Servs., Inc.*, 156 S.W.3d 885, 895 (Tex. App.—Fort Worth 2005, no pet.) (noting that "[a]n affirmative defense establishes an independent reason why the plaintiff should not recover on its asserted cause of action").

proved.[36]  Because Appellants did make these verified denials, Tipton was required to prove that Appellants executed the deeds and that the endorsements on the deeds were genuine.

Both deeds were acknowledged and notarized by Lana Trimble, a notary public of the State of Texas.  The acknowledgment on the Watson deed states that Larry and Sheridan Watson personally appeared before Trimble and acknowledged that they executed the deed for the purpose and consideration expressed in it.[37]  The acknowledgment on the Kennedy deed states that Weldon appeared before her and made an identical acknowledgment.  An acknowledgment on a deed is prima facie evidence that the grantor executed the deed for the consideration expressed in the deed.[38]  Tipton therefore made

---

[36] *See* Tex. R. Civ. P. 93.

[37] *See* Tex. Civ. Prac. & Rem. Code Ann. § 121.006(b)(1) (Vernon 2005) (defining "acknowledged" as meaning "that the person personally appeared before the officer taking the acknowledgment and acknowledged executing the instrument for the purposes and consideration expressed in it").

[38] *See Bell v. Sharif-Munir-Davidson Dev. Corp.*, 738 S.W.2d 326, 330 (Tex. App.—Dallas 1987, writ denied) (stating that "[t]he law is settled that a certificate of acknowledgment is prima facie evidence that [the grantor] appeared before the notary and executed the deed in question for the purposes and consideration therein expressed" and that "[c]lear and unmistakable proof that either the grantor did not appear before the notary or that the notary practiced some fraud or imposition upon the grantor is necessary to overcome the validity of a certificate of acknowledgment").

a prima facie case as to the genuineness of Appellants' signatures and as to Appellants' execution of the deeds.[39]  To defeat Tipton's right to recover on these grounds, Appellants would have had to present clear evidence sufficient to raise a fact issue on whether they executed the deeds or endorsed them.[40] They produced no such evidence.

Having held that Tipton produced sufficient evidence to establish his right to judgment and that Appellants failed to produce evidence raising a genuine issue of material fact as to his right to judgment and failed to produce evidence on their affirmative defense, we overrule their first point.

## C.  Whether the trial court erred by vacating a previously granted motion for new trial

In Appellants' third point, they argue that the trial court erred by "ungranting" a previously granted motion for new trial because it did so outside of its plenary power.

On October 24, 2006, Appellants filed a motion for new trial.  By that time, they had obtained new counsel.  On January 5, 2007, the trial court entered an order stating that the motion was granted.  Tipton filed a motion to reconsider in which he alleged that the new trial had been granted as to Weldon

---

[39] *See id.*

[40] *See id.*

23

only and asking the court to reconsider its ruling.  On January 12, 2007, the trial court entered an order vacating its order on the motion for new trial.

The order granting the motion for new trial was signed on the 105th day after the court entered final judgment.  This order was within the trial court's plenary power.[41]  But Appellants, relying on the Supreme Court of Texas's opinion in *Porter v. Vick*,[42] argue that a trial court loses power to set aside a previously granted motion for new trial seventy-five days after final judgment, and thus, because the motion for new trial in this case was granted after that time period, the trial court could not have vacated the motion.  After the parties filed their briefs in this case, the supreme court overruled *Porter v. Vick*.[43]  In *Baylor Medical Center*, the supreme court held that when a new trial is granted, "the case stands on the trial court's docket 'the same as though no trial had been had.'"[44]  Thus, the trial court has the power to set aside an order granting

---

[41] *See Philbrook v. Berry*, 683 S.W.2d 378, 379 (Tex. 1985); Tex. R. Civ. P. 329b(a), (c), (e).

[42] 888 S.W.2d 789 (Tex. 1994).

[43] *See In re Baylor Med. Ctr. at Garland*, No. 06-0491, 2008 WL 3991132, at *3 (Tex. Aug. 29, 2008) (orig. proceeding) (internal citations omitted).

[44] *Id.* at *2 (internal citations omitted).

a motion for new trial "any time before a final judgment is entered."[45]  Because the trial court had the power to set aside the new trial order at any time before a new final judgment was entered, the trial court did not err by "ungranting" the motion.  We overrule Appellants' third point.

## IV. CONCLUSION

Having overruled each of Appellants' points, we affirm the trial court's judgment.

LEE ANN DAUPHIINOT
JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED:  November 6, 2008

---

[45] *Id.*